UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


MIGUEL A. PEREZ,

     - Plaintiff


    v.                              CIVIL NO. 3:04CV1208(CFD)(TPS)


JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

     - Defendant


<u>**RECOMMENDED RULING**</u>

     The plaintiff, Miguel A. Perez, brings this appeal under 42 U.S.C. § 405(g) (2000) seeking review of a final decision by the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits. **(Dkt. #3.)** The plaintiff has moved for an order reversing the Commissioner's decision or, in the alternative, for an order remanding his case back to the SSA for further proceedings **(Dkt. #17)** and the defendant has moved for an order affirming the decision. **(Dkt. #23.)** For the reasons stated below, the plaintiff's motions for judgment and remand should be **DENIED.** The defendant's motion to affirm should be **GRANTED.** 28 U.S.C. § 636 (b)(1)(A).

    **I.  ADMINISTRATIVE PROCEEDINGS AND SUMMARY OF FACTS**

     On June 6, 1991, Celia Perez filed an application for Supplemental Security Income ("SSI") on behalf of her son, Miguel

A. Perez, the claimant in this case.[1]  (Tr. 107.)  The claimant, who was born on September 25, 1985, was found to be "disabled" within the meaning of the Social Security Act at a hearing on June 16, 1993, because of his chronic bronchial asthma.  (Tr. 107-09.) Miguel retained this "disabled" status until October 22, 1999, when Celia was informed her son's case had been reviewed, and that as of October 1, 1999, he was deemed no longer disabled due to medical improvement.  (Tr. 128.)  Celia appealed this decision, but a Disability Hearing Officer's ("DHO") decision in May 2000 also found that the claimant's impairments no longer met, equaled, or functionally equaled a Listing.  (Tr. 174.)

Celia requested a hearing by an Administrative Law Judge ("ALJ")(Tr. 185), which was held on May 10, 2001.  (Tr. 36-61.)  A supplemental hearing was held on February 1, 2002.  (Tr. 62-103.) On October 9, 2003, the Appeals Council of the SSA denied the claimant's request for review, thereby rendering the ALJ's decision the final decision of the SSA.  (Tr. 11-13.)  The ALJ made the following findings:

> 1. The claimant is currently age 16 and has never been engaged in substantial gainful activity (20 CFR § 416.972).
>
> 2. The claimant has the following severe impairments: asthma, allergic rhinitis, sinusitis, attention deficit disorder, and depression (20 CFR § 416.924(c)).
>
> 3.  The claimant was previously found disabled within the

---

[1]The claimant and his mother are referred to by their first names for ease of reference.  No disrespect is intended.

meaning of the Social Security Act, effective June 6, 1991.

4. As of October 1, 1999, and through the date of this decision, the claimant demonstrated medical improvement and he no longer had a combination of medically determinable physical or mental impairments that resulted in marked and severe functional limitations.

5. As of October 1, 1999, and through the date of this decision, the limitations resulting from the effects of the claimant's impairments do not meet, medically equal, or functionally equal the criteria of any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 (20 CFR § 416.924(d)).

6. As of October 1, 1999, and through the date of this decision, the claimant was no longer under a "disability" as defined in the Social Security Act (20 CFR § 416.924(d)).

The claimant filed this complaint on July 20, 2004. **(Dkt. #3.)** Miguel currently complains of, *inter alia*, asthma, allergies, Attention Deficit Hyperactivity Disorder ("ADHD" or "ADD"), and depression. (Id.) The issue before the court is whether the Commissioner's finding that Miguel Perez is not disabled is supported by substantial evidence.

## II.  STANDARD OF REVIEW

### A.  Standard for Court's Review of the ALJ's Decision

In reviewing a decision of the Commissioner under § 405(g), the district court performs an appellate function. Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981); Igonia v. Califano, 568 F.2d 1383, 1387 (D.C. Cir. 1977). A reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). See also Alston v. Sullivan, 904 F.2d

122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence")(citations omitted). "Substantial evidence" is less than a preponderance, but "more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  See Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). See also New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990)(stating that the court, in assessing whether the evidence which supports the Commissioner's position, is required to "review the record as a whole")(citations omitted).

One factor the court must consider is "whether the claimant was represented by counsel at the administrative hearing." Hankerson v. Harris, 646 F.2d 893, 895 (2d Cir. 1980).  If the claimant was not represented by counsel, "the ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" to ensure protection of the

-4-

claimant's rights.  (Id.)(internal citations omitted).  Still, the ALJ need not "reconcile every conflicting shred of medical testimony."  Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981).  In sum, "the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision."  Morris v. Barnhardt, 2002 U.S. Dist. LEXIS 13681, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y. July 26, 2002).

## B.   Medical Improvement Standard for a Child's Disability Case

The Social Security Disability Benefits Reform Act of 1984 provides that a SSI recipient's benefits may be terminated:

> . . . [if] the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such reasoning is supported by –
>
> > (1) substantial evidence which demonstrates that –
> >
> > > (A) there has been any medical improvement in the individual's impairment[s] . . ., and
> > >
> > > (B) the individual is now able to engage in substantial gainful activity

42 U.S.C. § 423(f).  A child's SSI benefits will discontinue if there has been any medical improvement and the child's impairment(s) no longer meets or medically or functionally equals the severity of any listings.  20 C.F.R. § 416.994(a)(2003).

To ensure that disability reviews are conducted uniformly, expeditiously and neutrally, 20 C.F.R. § 416.994a provides a three-step sequential process for evaluating whether a child should continue receiving SSI disability benefits.  In the first step, the

Commissioner considers whether there has been any medical improvement.  20 C.F.R. § 416.994(b)(1).  "Medical improvement," according to the regulations, is "any decrease in the medical severity of your impairment(s)" which was present when you were last deemed disabled.  20 C.F.R. § 416.994(c).  A determination of such an improvement "must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s)."  20 C.F.R. § 416.994(c).  If no medical improvement has been made, the Commissioner will likely find the disability continues, unless one of the exceptions to medical improvement applies.  20 C.F.R. § 416.994(b)(1).  If there has been a medical improvement, the Commissioner proceeds to step two.

The second step analyzes whether the impairment(s) meets or equals the severity of the impairment listed in the Appendix on which the disability was originally based.  20 C.F.R. § 416.994(b)(2).  If the Commissioner finds that the impairment still meets the severity of that listing, then the claimant is still disabled.  Id.  However, if the impairment no longer meets the severity requirement, then the Commissioner will continue to step three.  Id.

The third step evaluates whether the claimant is currently disabled.  See 20 C.F.R. § 416.994(b)(3).  In order to make this determination, the Commissioner will consider whether the claimant's current impairments are medically severe.  If they are,

-6-

the Commissioner will then consider whether the impairments meet, medically equal, or functionally equal the listings.  See 20 C.F.R. § 416.994a(b)(3)(2003).   If they do, the claimant is deemed disabled, otherwise, his disability has ended, and he no longer qualifies for disability benefits.   Id.

### C.  Standard for Determining Initial Disability of a Child

For purposes of SSI benefits, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "PRWORA"), Pub L. No. 104-193, 1996 US. Code Cong. & Admin. News (110 Stat.) 2105, establishes that a child under the age of eighteen is disabled if he:

> [1] has a medically determinable physical or mental impairment, [2] which results in marked and severe functional limitations, and [3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . [however,] no individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled.

Part 416 (Title XVI) of Title 20 of the Code of Federal Regulations, which governs social security benefits for "children," or individuals under the age of eighteen, establishes a three-step analysis for evaluating disability claims of children under the age of eighteen.[2]   20 C.F.R. 416.924.   First, the Commissioner considers whether the child is engaged in substantial gainful

---

[2]Miguel Perez turned eighteen years old on September 25, 2003, however he was sixteen years old at the time of the Administrative Hearing, therefore it is appropriate to review the ALJ's decision using the analysis established in 20 C.F.R. 20 C.F.R. § 416.924 for children under the age of eighteen.

activity.  20 C.F.R. § 416.924(b) (2005).  If not, the Commissioner next determines whether the claimant has a severe impairment or combination of impairments.  20 C.F.R. § 416.924(c)(2005).  If the child's impairment is not severe, then the child is not considered disabled.  If the severity requirement is met, the Commissioner's final step is to determine whether the impairment(s) meet, medically equals, or functionally equals the listings in Appendix 1 of the regulations.  20 C.F.R. § 416.924(d)(2005).  I f  t h e claimant has an impairment(s) that meets or functionally equals the requirements of a listing, and that meets duration requirements of a listing, then the Commissioner will find the claimant disabled. 20 C.F.R. § 416.924(d)(1)(2005).  If not, the claimant is not disabled for purposes of social security disability benefits.  20 C.F.R. § 416.924(d)(2)(2005).

For an impairment to "functionally equal" a listing, "it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  20 C.F.R. § 416.926a(a).  A "marked limitation" is one that "interferes *seriously* with your ability to independently initiate, sustain, or complete activities.

20 C.F.R. § 416.926a(e)(2)(i)(emphasis added).  An "extreme limitation" is one that "interferes *very seriously* with your ability to independently initiate, sustain, or complete activities."   20 C.F.R. § 416.926a(e)(3)(1)(emphasis added).

The six functional domains that are considered for "extreme"

and "marked" limitations are: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being."  20 C.F.R. § 416.926a(b)(1).

### III.  DISCUSSION

The pro se plaintiff generally claims that he, Miguel Perez, remains disabled because of asthma, allergies, ADHD, and depression, among other things.  (See Pl.'s Mem. Supp. Mot.)  The claimant's mother, acting on his behalf, explains that the claimant refused to admit that he was disabled because he was "in denial" at the Social Security Hearing.  (Id., at 11.)  She argues that the claimant's treatments "cost a lot of money," that the family cannot afford (id. at 17.), and that his impairments meet the requirements set forth in "the listings" (id. at 18).  Celia proffers similar arguments in the Plaintiff's Response to Defendant's Motion to Affirm.  (See Pl.'s Resp. Def.'s Mot.)  She argues that Miguel continues to be in denial, that he doesn't only have mild asthma (id., at 7), that he exaggerates his ability to participate in sports (id., at 18), and that "he have a severe impairment" (id., at 12).

Despite the more lenient standard to be used by courts in cases involving pro se plaintiffs, the majority of Celia Perez's claims are not legally cognizable, and even where they are, the

-9-

record does not support them.  The ALJ's finding is not the product of legal error and is supported by substantial evidence, therefore the Commissioner's motion to affirm should be **GRANTED**, and plaintiff's cross-motion for reversal or remand should be **DENIED**.

## A.   Step 1: Medical Improvement

The first step in the sequential evaluation to determine whether benefits should be terminated is to analyze whether there has been medical improvement in Miguel's impairment since the date of his last favorable disability determination.[3]   20 C.F.R. § 416.924a(b)(1).   The ALJ's conclusion that Miguel's medical condition improved is supported by substantial evidence.   Miguel was last deemed disabled on June 16, 1993.  At this time, he had chronic bronchial asthma and suffered from recurring episodes of acute asthma requiring medication and multiple hospitalizations. ALJ Ronald Thomas supported his finding that Miguel's condition has improved with evidence that Miguel's asthma-related hospital visits have decreased since 1993, and that his asthma is generally stable and mild when he takes his medications.  (Tr. 28-29.)  Given that the ALJ provided medical evidence from Bridgeport Hospital, Dr. Weber-Chess and Dr. Krassner that Miguel's medical condition has

---

[3]That the ALJ does not strictly follow the steps outlined in 20 C.F.R. § 416.994(b) as the Court does in this opinion, does not indicate that the ALJ's decision is inherently faulty.  The ALJ's finding may be upheld as long as it is supported by substantial evidence and it is not based upon legal error. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).

improved, this court finds the ALJ's determination concerning this first step is supported by substantial evidence.

## B.    Step 2: Severity of the Impairment

The second step of the sequential evaluation is to evaluate whether Miguel's impairment still *meets* or *medically equals* the severity of the listed impairment it previously met or equaled. Miguel was initially found disabled with Asthma, as defined in Section 103.03.[4]   The ALJ's conclusion that Miguel's asthma no

---

[4]A. FEV1 equal to or less than the value specified in Table I of 103.02A

or

B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

or

C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

    1.  Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or

    2.  Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period;

or

D.  Growth impairment as described under the criteria in

longer meets or equals the severity of the listed impairment is supported by substantial evidence.

Section 103.03 has four parts, labeled A through D.  The requirements of Section 103.03A and 103.03D may be disposed of quickly.  Section 103.03A requires the claimant's FEV1 to be equal to or less than the value specified in Table I of 103.02A. Miguel's FEV1 in 2001 exceeded that required in Table 1 both before and after medication, thus failing to fulfill this requirement. Similarly, Section 103.03D requires "growth impairment," however there is no indication in the record of concern about Miguel's growth or any indication that his growth was impaired.  Therefore, the ALJ correctly concluded that Miguel's impairments do not meet these criteria.

Section 103.03B requires "[a]ttacks . . ., in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year."  The medical record indicates that Miguel's impairment does not meet this listing because his attacks can be well controlled by medication.  For example, records from Bridgeport Hospital between 1993 and 2002 suggest that the majority of Miguel's hospital treatments during that period were for ailments such as ear infections and sore throats, and that visits for asthma were

_____

100.00

Listing 103.03, 20 C.F.R. Part 404, Subpart P, Appendix 1 (2003).

-12-

sporadic because the asthma was "stable and mild." (Tr. 28.) Similarly, Dr. Weber-Chess indicated that Miguel's asthma responded well to medication, and although the asthma required outpatient visits, it did not require frequent hospitalization.  (Tr. 29). For these reasons, Miguel's asthma does not meet the criteria listed in Section 103.03B.

Finally, with respect to Section 103.03C, there is substantial evidence that Miguel's asthma does not meet its requirements either.  Section 103.03C requires the claimant suffer "[p]ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods."  The ALJ pointed to evidence that Miguel had a decreased number of acute attacks, and that he experienced extended symptom-free periods, in which he was able to participate in athletics, spend time with friends, attend school, and otherwise lead a more or less normal teenage life.  As the ALJ correctly found that the evidence in Miguel's record does not fulfil the criteria of Sections 103.03A-D, it is appropriate to continue to Step 3 of the sequential evaluation.

## C.  **Step 3: Currently Disabled**

In this final step, the Commissioner evaluates whether the claimant is currently disabled under the regulations which determine children's *initial* eligibility for disability benefits. In making this determination, the Commissioner will complete another three-step analysis, and will look at all of the claimant's

*current* ailments, not merely those present at the time of the most recent disability determination.  Again, the Court finds the ALJ's determination that the claimant is no longer under a disability is supported by substantial evidence.

The first step in determining current disability is to inquire whether the claimant has a severe impairment or combination of impairments.  20 C.F.R. § 416.994a(3)(i).  There is no dispute that the claimant's medically determinable impairments are severe (Tr. 32), thus this criteria is satisfied, and the analysis proceeds to the next step.

In the second step, the regulations dictate consideration of whether the claimant's impairments *meet* or *medically equal* the severity of any listed impairment.  20 C.F.R. § 416.994a(3)(ii). As the ALJ highlighted, Dr. Leonard Krassner, an independent medical expert, opined at the February 2002 hearing that Miguel's conditions do not meet, medically equal, or functionally equal this severity requirement.  (Tr. 30.)  In addition, the medical record indicates that both Barbara Coughlin, M.D. and Katherine Tracy, M.D. came to this same conclusion at Continuing Disability Reviews of Miguel on October 19, 1999 (Tr. 380) and January 3, 2000, respectively (Tr. 389).  Thus, the ALJ's finding on this element is supported by substantial evidence, and it is proper to proceed to the last step of the current disability analysis.

The final step calls for evaluation of whether the claimant's

-14-

impairments *functionally equal* the listings.    20 C.F.R. §
416.994a(3)(iii).  To support a finding of functional equivalence,
Perez's conditions must "result in 'marked' limitations in two
domains of functioning or an 'extreme' limitation in one domain."
20 C.F.R. § 416.926a(a).   The six functional domains that are
considered for "extreme" and "marked" limitations are: (i)
Acquiring and using information; (ii) Attending and completing
tasks; (iii)Interacting and relating with others; (iv) Moving about
and manipulating objects; (v) Caring for yourself; and, (vi) Health
and physical well-being."  20 C.F.R. § 416.926a(b)(1).  In making
this determination, the ALJ must consider "all of the relevant
evidence in the record, including: (1) the objective medical facts;
(2) the medical opinions of the examining or treating physicians;
(3) the subjective evidence of the claimant's symptoms submitted by
the claimant, [his] family, and others; and (4) the claimant's
educational background, age, and . . . experience."  Morgan v.
Barnhart, 2005 U.S. Dist LEXIS 6763, at *41 (S.D.N.Y. April 21,
2005)(quoting DeLeon v. Apfel, 2000 U.S. Dist LEXIS 18438, 2000 WL
1873851 at *8 (internal quotations omitted)).

The record indicates that Miguel does not suffer extreme
limitations in any of these six domains, as he is able to function
in all areas, so the court focuses its review on any marked
limitations he may exhibit.   The court turns to the relevant

functional domains.[5]

A. <u>Acquiring and using information</u>

The regulations describe acquiring and using information for adolescents between age 12 and 18, Miguel's age-group at the time of the ALJ hearing.   20 C.F.R. § 416.926a(g)(2)(v).   Adolescents should be able to, *inter alia*, demonstrate what they have learned in academic assignments, use what they have learned in daily living situations, and comprehend and express simple and complex ideas. <u>Id.</u>   Examples  of  limited  functioning  in  this  area  include difficulty  recalling  important  things  you  learned  in  school,

_____

[5]It seems clear to the Court that the functional domain concerning moving about and manipulating objects is irrelevant. The regulations state that adolescents should be able to use motor skills to easily get around school, the neighborhood and the community, and to participate in a full range of physical fitness activities.   <u>Id.</u> at § 416.926a(j)(2)(v).   The record is replete with evidence that Miguel is able to get around his neighborhood and school, in addition to participating in physical fitness activities, such as boxing, basketball and biking.   (Tr. 5.)

The functional domain covering "interacting and relating with others" is also not pertinent to this matter.   In this domain, the regulations consider how well a claimant can "initiate and sustain emotional connections with others, develop and use the language of [his] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."   Id. at § 416.926a(i).   There is little evidence in the record that Miguel has relational difficulties with anyone except his parents (ALJ, 30) and his brothers (Pl.'s Resp. Def.'s Mot. 18), which is normal for an adolescent.   A 1999 report noted that Miguel was getting along with his peers better at school.   (Tr. 27.)   Miguel's testimony indicates he is able to sustain friendships and has had romantic relationships with others his age.   His high level of involvement in extra-curricular activities also suggests he can relate well to others both individually and in groups.

talking in short, simple sentences, and having difficulty explaining what you mean. Id. at § 416.926a(g)(3)(i), (v).

The ALJ's finding that Miguel does not have marked limitations in acquiring or using information is supported by substantial evidence. Although Miguel's educational records suggest that his academic success has fluctuated between 1994 and 2002, and indeed that he failed two classes in his ninth grade year (Tr. at 30), the claimant is capable of acquiring and using information, particularly when he is taking medication for his ADHD. (Tr. 27-28.) As the ALJ noted, Miguel's social worker opines he has "the potential to be an excellent student." (Tr. 28.) Miguel's hearing testimony indicated that at the time of the hearing, he was passing all of his courses (Tr. 30), and a May 2001 school evaluation stated that his testing was above or at grade level in all areas except Math (Tr. 27-28), signaling that he is able to demonstrate what he has learned and to express his ideas, thus fulfilling the criteria of this functional domain. (Tr. 31.)

B. Attending and completing tasks

The domain of attending and completing tasks considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace a which you perform activities and the ease with which you change them." Id. at § 416.926a(h). For example, adolescents in Miguel's age group should be able to pay attention

-17-

to increasingly longer presentations and discussions, maintain concentration while reading textbooks, organize their materials and plan their time in order to complete school assignments. Examples of limited functioning in this domain include being easily startled, distracted, or overreactive to sounds, sights, movements, or touch, being easily frustrated and giving up on tasks, or requiring extra supervision to stay engaged in an activity. Id. at § 416.926a(h)(3)(i), (iv), (v).

Again, although Miguel is diagnosed as ADHD and he has had some difficulty completing schoolwork, there is substantial evidence that he does not suffer marked limitations in this area. The ALJ provided evidence that Miguel can maintain concentration, particularly when taking his medications and provided with academic support. (Tr. 29.) Reports in both May and November of 1999 stated the claimant's schoolwork was greatly improved when he began taking his attention deficit disorder medication regularly. (Tr. 27.) A report from May 2000 indicated that he had some trouble with organizational skills and in completing homework, but overall he had made excellent academic progress. (Id.) Miguel testified that he enjoys boxing, basketball, computer games, and drumming, suggesting that he is able to stay engaged in activities that are non-school related, and that he is able to switch pursuits with relative ease. (Tr. 30.) Although Miguel may have *some* limitations in this area, particularly in the realm of academics,

those limitations are not "marked," as they do not *seriously* interfere with his ability to independently initiate, sustain, or complete activities.    20 C.F.R. § 416.926a(e)(2)(I).

C. Caring for yourself

The regulations define "caring for yourself" as "how well you maintain a healthy emotional and physical state."   Id. at § 416.926a(k).   Adolescents should be increasingly independent in day-to-day activities, but may feel anxiety about changes in the body's development, that can result in anxiety or worry that can lead to anger or frustration.   Id. at § 416.926a(k)(2)(v). Adolescents should also be learning appropriate ways to express both good and bad feelings.  Id. Examples of limited functioning in caring for oneself include engaging in self-injurious behavior, not pursuing enjoyable activities or interests, and having a disturbance in eating or sleeping patterns.   Id. at § 416.926a(k)(3)(iv)-(vi).

Miguel has some limitations in dealing with bad feelings.  A 1996 psychological evaluation diagnosed Miguel with depression in addition to ADD, noting that he was hyperactive at times, and withdrawn and quiet at other times.  (Tr. 28.)  Miguel's educational records have noted, among other things, a refusal to take medication for his ADD and a refusal of help with school work, a lack of motivation, a failure to make a good effort, and a negative attitude.  (Tr. 27-28.)  In addition, Miguel was once

-19-

suspended from school for punching an adult male who was with one of his former girlfriends.  (Tr. 28.)

Despite Miguel's difficulties dealing with bad feelings and his struggles with depression, Miguel's limitations are less than marked because they do not *seriously* interfere with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).   There is no evidence in the record that Miguel does not know how to express good feelings, and there is substantial evidence that he pursues enjoyable activities and interests.   Some educational records indicate improvement in behavior and motivation for school work.  (Tr. 27.)  In general, Miguel is able to maintain a healthy emotional and physical state. (Tr. 31.)

D. Health and physical well-being

In this functional domain, the regulations examine the "cumulative effects of physical or mental impairments and their associated treatments or therapies on [] functioning that were not previously considered."   Id. at § 416.926a(l).   Examples of limitations in health and physical well-being include generalized symptoms (such as weakness, dizziness, agitation, lethargy, or psychomotor retardation), somatic complaints related to impairments, and limitations in physical functioning because of treatment.  Id. at § 416.926a(l)(4)(i),(iii).

The ALJ has considered Miguel's critical impairments in the

previous functional domains.  The cumulative effects of Miguel's physical impairments (asthma and allergies) and mental impairments (ADHD and depression) and their associated treatments on his functioning are few.  The ALJ concludes that "the overwhelming preponderance of the evidentiary record demonstrates that these disorders are well controlled with medication."  (Tr. 31.)  The medical and educational records, in addition to expert testimony and the claimant's own testimony, noted in the discussion of the preceding functional domains, constitutes substantial evidence that Miguel does not have a marked limitation in the realm of health and physical well-being.

In sum, Miguel does not suffer from a marked limitation in two of the six functional domains.  Although Miguel has some limitations, they do not *seriously* limit his abilities in any of these six areas.  Thus, the ALJ's finding that the claimant's impairments do not functionally equal any of the listed impairments is supported by substantial evidence.

### IV.  CONCLUSION

Based upon the foregoing, the undersigned concludes that the ALJ did not misapply, or fail to apply, the correct law.  Rather, it appears that the ALJ correctly applied the law and that his factual findings are supported by substantial evidence in the record as a whole.  Therefore, the plaintiff's motion for an order reversing the decision of the ALJ, or in the alternative, remanding

for a new hearing **(Dkt. #17)** should be **DENIED.**  The Commissioner's motion for an order affirming the administrative decision **(Dkt. #23)** should be **GRANTED.**

The plaintiff may timely seek review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 72(b).  Failure to do so may bar further review.  28 U.S.C. § 636(b)(1)(B); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated at Hartford, Connecticut this 26th day of January, 2006.**

**/s/ Thomas P. Smith**
**THOMAS P. SMITH**
**UNITED STATES MAGISTRATE JUDGE**